**Blane BECKWITH, et al.,
Plaintiffs–Appellants,**

**v.**

**Kenneth KIZER, Director of California Department of Health Services; California Department of Health Services; Louis Sullivan, M.D., Secretary of U.S. Department of Health and Human Services, Defendants–Appellees.**

No. 89–15500.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 17, 1989.

Decided Aug. 30, 1990.

Evelyn R. Frank, Legal Aid Soc. of Alameda County, Oakland, Cal., for plaintiffs-appellants.

Ralph M. Johnson, Deputy Atty. Gen., San Francisco, Cal., for defendant-appellee Kenneth Kizer.

Barbara H. Fisher, Office of Gen. Counsel, Baltimore, Md., Julie E. Billingsley, Dept. of Health and Human Services, Washington, D.C., for defendant-appellee Health & Human Services.

Before SCHROEDER, NELSON and WIGGINS, Circuit Judges.

SCHROEDER, Circuit Judge:

This case arises under provisions of the Federal Social Security Act authorizing federal financial assistance to states participating in the Medicaid Program, a program to fund costs of medical treatment for needy persons. More specifically, the case involves 42 U.S.C. § 1396n(c) which permits participating states, with the approval of the Secretary of the United States Department of Health and Human Services, to provide home care assistance to certain individuals who would otherwise require institutional care. The provisions of that statute allow the Secretary to "waive" certain uniform requirements of the Act, such as those calling for statewide applicability of a program, in order to permit the states to target particular groups. *See* 42 U.S.C. § 1396n(c)(3).[1]

Under these provisions, states may target patients in a class defined by a specific illness or by another condition. *See* 42 U.S.C. § 1396n(c)(7)(A). In order to qualify for a proposed waiver, states must be able to show that the costs of providing the care in the home environment would be less than those of providing it in the institution. 42 U.S.C. § 1396n(c)(2)(D).

---

1. Section (c)(3) provides:

   (3) A waiver granted under this subsection may include a waiver of the requirements of section 1396a(a)(1) of this title (relating to statewideness), section 1396a(a)(10)(B) of this title (relating to comparability), and section 1396a(a)(10)(C)(i)(I–II) of this title (relating to income and resource rules applicable in the community). A waiver under this subsection shall be for an initial term of three years and, upon the request of a State, shall be extended for additional five-year periods unless the Secretary determines that for the previous waiver period the assurances provided under paragraph (2) have not been met. A waiver may provide, with respect to post-eligibility treatment of income of all individuals receiving services under that waiver, that the maximum amount of the individual's income which may be disregarded for any month for the maintenance needs of the individual may be an amount greater than the maximum allowed for that purpose under regulations in effect on July 1, 1985.

   42 U.S.C. § 1396n(c)(3)(1988).

In this case, California in 1987 received a section 1396n(c)(7) waiver to provide benefits to a class defined as severely physically disabled individuals who require 90 days or more of acute-level hospital care, and who will receive the benefits immediately after being discharged from a hospital. The named plaintiffs filed this class action against both state and federal officials on behalf of those who require intensive in-home medical services in order to avoid hospitalization, but who are not now hospitalized. They point out that for at least some of them, the hospitalization required to qualify for the program may result in an increased risk of infection and loss of quality of life. They object to the provisions in the California waiver that to qualify for assistance, individuals must be hospitalized. They contend that the statute as recently amended bars the states from imposing any requirement of hospitalization. They also contend, in the alternative, that the California hospitalization limitation is a denial of equal protection. They seek an injunction requiring the state to provide the benefits to all class members.

The district court granted summary judgment in favor of the defendants. It held that the hospitalization requirement was neither irrational nor barred by the provisions of the Act which are intended to permit states to target particular groups while excluding others that may be equally needy.

■ Based upon our review of the statute, its history, and the history of the California program, we believe that the plaintiffs have demonstrated a history of overly restrictive interpretation on the part of the Secretary of Health & Human Services in administering the statute. In 1987, for example, the Secretary effectively rejected California's proposal for a more liberal hospitalization requirement. The Secretary's reaction to the original 1987 California proposal was a misreading of congressional intent, and Congress made this clear in a 1988 amendment to the cost effectiveness provisions of the statute. Technical and Miscellaneous Revenue Act of 1988, § 8437, Pub.L. No. 100–647, 102 Stat. 3342, 3806 (codified as amended at .42 U.S.C. § 1396n(c)(7)(1988)). Plaintiffs are correct insofar as they maintain that the Secretary can no longer force the state to impose a requirement of hospitalization.

The state is not acting under any such compulsion at this time, however. It has chosen to keep the existing program for its present term, which has now been extended for a few months beyond its original July 1990 expiration date. While not mandating a hospitalization requirement, the federal statute itself does not bar all hospitalization requirements; it does not compel the state to open this program to all severely disabled persons without regard to any record of hospitalization as plaintiffs' complaint demands. We therefore affirm the district court's dismissal of the plaintiffs' claim for injunctive relief.

Our interpretation of section 1396n(c)(1) and the opaque language of subsection (7) [2], on which plaintiffs rely, is best understood within the historical context of this

**2.** Section 1396n(c)(7) provides:

(7)(A) In making estimates under paragraph (2)(D) in the case of a waiver that applies only to individuals with a particular illness or condition who are inpatients in, or who would require the level or care provided in, hospitals, or in skilled nursing or intermediate care facilities, the State may determine the average per capita expenditure that would have been made in a fiscal year for those individuals under the State plan separately from the expenditures for other individuals who are inpatients in, or who would require the level of care provided in, those respective facilities.

(B) In making estimates under paragraph (2)(D) in the case of a waiver that applies only to individuals with developmental disabilities who are inpatients in a skilled nursing facility or intermediate care facility and whom the State has determined, on the basis of an evaluation under paragraph (2)(B), to need the level of services provided by an intermediate care facility for the mentally retarded, the State may determine the average per capita expenditures that would have been made in a fiscal year for those individuals under the State plan on the basis of the average per capita expenditures under the State plan for services to individuals who are inpatients in an intermediate care facility for the mentally retarded, without regard to the availability of beds for such inpatients.

42 U.S.C. § 1396n(c)(7) (1988).

California waiver. California's original waiver request, submitted in 1987, targeted two categories of severely disabled individuals requiring 90 days or more of acute hospital-level care. The first group constituted persons who were currently in a hospital, and for whom participation in the program meant de-institutionalization. The second group included those who had been released from a hospital within 60 days of entering the program. For the latter group, there was a requirement of prior hospitalization, but not a requirement of hospitalization immediately prior to entry into the program. For both groups, the state planned to demonstrate cost effectiveness by comparing costs under the waiver program to the costs of institutional care for persons who were severely disabled.

The Secretary took issue with such cost justification for the second category of individuals, i.e., those who had been released from a hospital within 60 days and for whom entry into the program would not result in de-hospitalization. According to the Secretary's interpretation, the state could not demonstrate cost effectiveness for that group by using costs of hospitalization only for the severely disabled. Rather, the Secretary took the position that cost effectiveness for those who had been discharged from a hospital had to be demonstrated by using the average annual statewide in-patient costs of all hospital in-patients, not merely of those who required stays of 90 days or more.

The Secretary's designee therefore wrote to the state in 1987 that:

> The statute as amended by OBRA–86 [Omnibus Budget Reconciliation Act of 1986, § 9411(a)(3), Pub.L. No. 99–509, 100 Stat. 1874, 2061–62 ("OBRA–86")] allows less than statewide cost estimates only for deinstitutionalized groups. Alternatively, the State may include diverted and/or waiver recipients who are not discharged immediately into the waiver by demonstrating cost-effectiveness using average annual statewide in patient hospital costs of all hospital in patients rather than targeting costs to hospital stays of 90 days or more.

The record shows that had California applied the statewide costs standard mandated by the Secretary at that time, the per capita allowable expenditures for each person in the second group would have been so small it would not have provided even one daily hour of nursing care. The state therefore chose to include in its waiver group only those who entered the program from a hospital. It excluded the second group who had been discharged.

In making this narrow interpretation, the Secretary was apparently relying upon the provision of subsection 7 then in effect which provided:

> In making estimates under paragraph (2)(D) in the case of a waiver that applies only to individuals with a particular illness or condition who are inpatients in hospitals or in skilled nursing or intermediate care facilities, *the State may determine the average per capita expenditure that would have been made in a fiscal year for those individuals under the State plan separately from the expenditures for other individuals who are inpatients of those respective facilities.*

OBRA–86, § 9411(a)(3) (codified as amended, 42 U.S.C. § 1396n(c)(7)) (emphasis added). In 1988, Congress endeavored to correct this misinterpretation of its intent by amending subsection 7 to make it clear that the average per capita expenditure should be computed separately for all targeted groups—not only those who are "in-patients" in hospital or care facilities, but also those "who would require" the level of care provided in those facilities. The amendment was retroactive to applications filed in 1987. *See* Technical and Miscellaneous Revenue Act of 1988, § 8437(a), Pub.L. No. 100–647, 102 Stat. 3342, 3804 (codified as amended in 42 U.S.C. § 1396n(c)(7) (1988)) ("TMRA–88"). The statute now provides:

> (7)(A) In making estimates under paragraph (2)(D) in the case of a waiver that applies only to individuals with a particular illness or condition who are inpatients in, or who would require the level or care provided in, hospitals, or in skilled nursing or intermediate care facilities, the

State may determine the average per capita expenditure that would have been made in a fiscal year for those individuals under the State plan separately from the expenditures for other individuals who are inpatients in, or who would require the level of care provided in, those respective facilities.

42 U.S.C. § 1396n(c)(7)(A) (1988).

The amendment was a clear message to the Secretary that benefits of the waiver program need not be limited to a target group already hospitalized. Rather, a state was permitted to target not only individuals who were actually institutionalized, but also those who would require institutionalization if not provided the services of the waiver program. This is consistent with the language of subsection 1:

> (1) The Secretary may by waiver provide that a State plan approved under this subchapter may include as "medical assistance" under such plan payment for part or all of the costs of home or community-based services (other than room and board) approved by the Secretary which are provided pursuant to a written plan of *care to individuals with respect to whom there has been a determination that but for the provision of such services the individuals would require the level of care provided in a hospital* or a skilled nursing facility or intermediate care facility the cost of which could be reimbursed under the State plan.

42 U.S.C. § 1396n(c)(1) (1988) (emphasis added).

We have no doubt that if California were now to ask for approval of its original proposal, or another proposal not limited to individuals who enter its waiver program from a hospital, the Secretary could not reject it on the same grounds that the Secretary used in 1987. The record in this case shows that the state did consider modifying its program after the amendment of the statute, but decided that reversion to its original plan, which would expand the number of persons eligible for the program, would be too costly.

The appellants not only challenge that decision as contrary to the statute, but go much farther. Plaintiffs urge that California must not only provide benefits to all those originally contemplated under the original proposal—i.e., those who would enter the program within 60 days after being released from a hospital—but that the statute requires the state and the federal government to open the California program to all persons who, if hospitalized, would be otherwise eligible for the program, regardless of whether they have ever actually been hospitalized in the past.

Like the district court, we cannot divine from the language of subsection 7 or the statutory history any intent to bar a state from defining a targeted class in terms of hospitalization history. The legislative history of subsection (c) shows that the waiver provisions developed from a restrictive beginning to one which expanded states' options. Subsection (c) began by allowing waiver programs only for people otherwise requiring nursing home care, *see* U.S.C. § 1396n(c)(1) (1982), and expanded to allow home and community-based services as an alternative to hospital care. *See* OBRA–86 § 9411(a)(3); TMRA–88 § 8437(a); H.R. Conf.Rep. 100–1104, 100th Cong. 2d Sess. at 284, *reprinted in* 1988 U.S.Code Cong. & Admin.News 5048, 5344. States were allowed this broad flexibility because history revealed that the programs were not abused; because the states shared the costs of these programs with the federal government, they were cost-effective. *See* H.R. No. 100–391(I), 100th Cong. 1st Sess., at 528–29, *reprinted in* 1987 U.S.Code Cong. & Admin.News 2313–348—49.

In this situation, the State of California did not choose to limit the target group to those suffering from any particular disease or disability. It chose to define its target class in terms of the need for long-term acute hospital-level care and to look to hospitalization as a criterion. We cannot say that in so doing it has violated the statute.

■ Plaintiffs alternatively contend that even if the statute itself is flexible enough to encompass a target class defined by hospitalization, such a definition is a denial of equal protection. Plaintiffs acknowledge that such a classification is subject

only to the lowest level of equal protection scrutiny, *see Schweiker v. Wilson,* 450 U.S. 221, 235, 101 S.Ct. 1074, 1083, 67 L.Ed.2d 186 (1981), but they contend the hospitalization requirement lacks even a rational basis. They stress that the purpose of the waiver provisions is to avoid unnecessary hospitalization, and that the effect of the hospitalization requirement is to force members of the plaintiff class into an unwanted and a more expensive hospital environment.

Definition of any waiver class necessarily involves difficult policy judgments concerning where the services would most efficiently be used. We lack the qualifications or the authority to pass upon the fiscal responsibility of California's waiver program in the manner plaintiffs request. At the same time we do not need to decide in this case whether conditioning benefits upon hospitalization would always be rationally related to a section 1396n(c) waiver, regardless of the nature of the targeted class. We are here faced with a situation in which the state has defined the class in material part upon the length of acute hospital care individuals would require if they were not provided home care services. The state also sought to predict the number of individuals in the targeted class with reasonable certainty. The state's program makes home care waiver services available in cases where the program will enable the recipient to leave an institution and return to a home environment. We cannot say that this decision is irrational. The statute is intended to alleviate the problem of unnecessary institutionalization, but does not purport to solve it altogether.

AFFIRMED.

