**Marion SKANDALIS, et al.,**

**v.**

**Audrey ROWE, Commissioner,**
**Connecticut Department of**
**Income Maintenance.**

**No. 2:91cv01196 (PCD).**

United States District Court,
D. Connecticut.

Jan. 13, 1993.

Hilary Dalin, Legal Assistance to Medicare Patients, Willimantic, CT, Sheldon Toubman, New Haven Legal Assistance, New Haven, CT, for plaintiffs.

Nyle Davey, Connecticut Atty. General's Office, Health & Human Services, Hartford, CT, for defendant.

William A. Collier, U.S. Atty.'s Office, Hartford, CT, for amicus curiae U.S.

## RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT

DORSEY, District Judge.

Plaintiffs and intervenor plaintiffs, individually and on behalf of all persons similarly situated, allege the unlawful denial of Medicaid benefits by defendant as Commissioner of the Connecticut Department of Income Maintenance ("DIM"), in violation of federal statutory requirements and the due process clause of the fourteenth amendment. Plaintiffs challenge defendant's imposition of an income cap of $1,266 per month, or 300 percent of the monthly Supplemental Security Income ("SSI") grant, on participation in the Medicaid Home and Community Based Services ("HCBS") program. Plaintiffs and defendants have moved for summary judgment on all claims.

### I. *Background*

The Medicaid program was established in 1965 "for the purpose of providing federal financial assistance to States that choose to reimburse certain costs of medical treatment for needy persons." *Harris v. McRae*, 448 U.S. 297, 301, 100 S.Ct. 2671, 2680, 65 L.Ed.2d 784 (1980). Medicaid is jointly administered by the state and federal governments. Under Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.* (hereinafter "Medicaid Act"), states providing medical care to needy individuals in accordance with the Medicaid law are eligible for federal financial assistance. 42 U.S.C. § 1396 *et seq.* DIM, which administers the Medicaid program in Connecticut, promulgated regulations to govern Medicaid eligibility.

Medicaid coverage is provided to three groups: the "categorically needy," the "optionally categorically needy," and the "medically needy." *See Lewis v. Grinker*, 965 F.2d 1206 (2d Cir.1992). To participate in the Medicaid program, states must provide medical services to the categorically needy, consisting mainly of persons eligible for assistance under the Aid to Families with Dependent Children ("AFDC") program, 42 U.S.C. §§ 601, *et seq.*, and the Supplemental Security Income ("SSI") pro-

gram for the aged, blind, and disabled, 42 U.S.C. §§ 1381, *et seq.* Participating states may, but are not required to, provide assistance to the optionally categorically needy, 42 C.F.R. §§ 435.200–435.231 and to the medically needy. *Georgia Dept. of Medical Assistance v. Bowen,* 846 F.2d 708, 709 (11th Cir.1988). *See also Schweiker v. Gray Panthers,* 453 U.S. 34, 101 S.Ct. 2633, 69 L.Ed.2d 460 (1981). The medically needy meet nonfinancial eligibility criteria for assistance under the AFDC or SSI programs, but their income or assets exceed relevant financial eligibility standards. *See* 42 C.F.R. §§ 435.300–435.350. Persons who are not categorically needy can qualify for Medicaid as medically needy by "spending down" on medical expenses the amount by which their income exceeds the Medically Needy Income Level ("MNIL"). *See* 42 U.S.C. § 1396b(f)(2)(A); 42 C.F.R. § 435.-831.

The Medicaid HCBS program is governed by 42 U.S.C. § 1396a(a)(10)(A)(ii)(VI) and 42 U.S.C. § 1396n(c). The former specifies that a state may provide medical services:

> (ii) at the option of the State, to any group or groups of individuals described in section 1396d(a) of this title (or in the case of individuals described in section 1396d(a)(i) of this title, to any reasonable categories of such individuals) who are not [categorically needy] but—
>
> \*    \*    \*    \*    \*    \*
>
> (VI) who would be eligible under the State plan under this title if they were in a medical institution, with respect to whom there has been a determination that but for the provision of home or community-based services ... they would require the level of care provided in a hospital, nursing facility or intermediate care facility for the mentally retarded the cost of which could be reimbursed under the State plan, and who will receive home or community-based services pursuant to a waiver granted by

the Secretary under subsection (c), (d), or (e) of section 1396n of this title.

42 U.S.C. § 1396n(c)(1) authorizes such a waiver permitting provision of "home or community based services ... to individuals with respect to whom there has been a determination that but for the provision of such services the individuals would require the level of care provided in a [medical facility] the cost of which could be reimbursed under the State plan." Section 1396n(c)(2)(D) further conditions a state's participation in the HCBS program upon a finding by the Secretary of Health and Human Services that the estimated Medicaid expenditure will not exceed "the average per capita expenditure that the State reasonably estimates would have been made in that fiscal year for expenditures under the State plan for such individuals if the waiver had not been granted." 42 U.S.C. § 1396n(c)(2)(D).[1] Thus, the cost of HCBS benefits may not exceed the cost of providing the medically necessary services under an alternative Medicaid program.

DIM was granted a waiver under § 1396n(c) to operate a home care program, labelled the Pre–Admission Screening/Community Based Services ("PAS/CBS") program, *see* Conn.Gen.Stat. § 17–314b. The PAS/CBS program serves only individuals who would qualify for Medicaid as categorically needy or as optionally categorically needy, but including individuals who qualify for Medicaid under the special institutional income level of 300 percent of the monthly SSI grant, or $1,266 per month. As a result, individuals with gross income in excess of $1,266 per month are excluded from coverage under DIM's waiver program.

The plaintiffs are elderly individuals whom defendant has found to need a nursing home level of care, but who have been denied PAS/CBS benefits on the ground that their income exceeds $1,266 per month.[2] If the plaintiffs were institutionalized, their nursing home costs would exceed the difference between their monthly

---

**1.** The regulations governing 42 U.S.C. § 1396n(c) are found at 42 C.F.R. §§ 435.217, and 441.300–441.310.

**2.** Plaintiff Skandalis receives a total income of $1,307 per month. Plaintiff Rondina receives a total income of $1,352 per month.

incomes and the MNIL. Thus, they are eligible for Medicaid institutional coverage as medically needy.

## II. *Discussion*

A motion for summary judgment involves a determination as to whether there exists any genuine issue of material fact. That standard is fully articulated in *Cote v. Durham Life Ins. Co.*, 754 F.Supp. 18 (D.Conn.1991). The issue presented is whether a state which provides the HCBS program must provide coverage to individuals who are not categorically needy. Sections 42 U.S.C. §§ 1396a(a)(10)(A)(ii)(VI) and 1396n(c) give the state the option to provide home care services to persons who would be institutionalized absent such services, and for whom the cost of institutionalization would be covered under the particular state's Medicaid program. Plaintiffs allege that these statutory provisions do not authorize states to impose a specific income cap on participation in the HCBS program. The defendant argues that the cap is an exercise of its option under the statutes.

### A. Analysis of 42 U.S.C. § 1396

The dispute here centers on the provision in § 1396a(a)(10)(A)(ii) that DIM may render medical services "to any group or groups of individuals described in section 1396d(a)" who require an institutional level of care and who would be eligible for Medicaid if they were in a medical institution. The parties contest whether a "group or groups of individuals" accepted by a state as eligible for HCBS must include persons qualified for Medicaid as medically needy. The defendant claims the right to include those who are categorically needy without including those who are medically needy in defining eligibility for institutional Medicaid coverage. The plaintiffs argue that the statute does not permit a line-drawing to that effect.

The plaintiffs are found to be eligible for the HCBS program under the express terms of § 1396a(a)(10)(A)(ii)(VI). The statute provides no basis for denial of participation in the HCBS program to a group based on the manner in which they qualify for Medicaid. Plaintiffs meet all the relevant statutory requirements. Plaintiffs are "described in section 1396d(a);" they are 65 years of age or older, as specified in § 1396d(a)(iii). They require a nursing home level of care. The cost of a nursing home would exceed the difference between plaintiffs' gross incomes and the MNIL. Once institutionalized, plaintiffs would be eligible for Medicaid under the Connecticut plan; hence the plaintiffs would be eligible for Medicaid "under the State plan ... if they were in a medical institution." 42 U.S.C. § 1396a(a)(10)(A)(ii)(VI).

All provisions of a statute must be construed, where possible, so as to have substantial meaning. Sutherland, Statutory Construction §§ 46.04, 46.06 (4th ed.). Section 1396d(a) identifies ten groups, including but not limited to children (subsection i), the elderly (subsection iii), blind persons (subsection iv), and totally disabled adults (subsection v). Section 1396d(a) does not refer to any group based either on the manner of qualifications for Medicaid or on individuals' incomes. If, as argued by defendant, the "group or groups" language were read to allow states absolute discretion in defining the groups permitted to participate in an HCBS program, then the reference to § 1396d(a) and the ten groups specified therein would be purposeless. The phrase "group or groups of individuals" will not be interpreted as to render meaningless the phrase "described in section 1396d(a)" which immediately follows and amplifies it.

Analysis of the statute does not permit the conclusion that Congress intended to permit line-drawing beyond that which is specifically authorized. Congress explicitly permitted the further categorization of the groups identified in § 1396d(a) where it intended to allow states to do so. For example, § 1396d(a)(i), which covers all persons under 21 years of age, authorizes states to make "reasonable categories of such individuals." § 1396a(a)(10)(A)(ii). No such authorization is extended to elderly persons, *see* § 1396d(a)(iii). Accordingly, a state is not authorized to include in the

HCBS program only a segment of a group described in § 1396d(a) and thus exclude another segment. Its option is to include or not include an entire group.

■ The defendant further argues that she is afforded the flexibility to exclude plaintiffs from the PAS/CBS program in 42 U.S.C. § 1396a(a)(10)(A)(ii)(VI), which limits HCBS to individuals who will receive such services "pursuant to a waiver granted by the Secretary," and in 42 U.S.C. § 1396n(c)(2) which provides for evaluation of individuals who may be eligible for such services "under such waiver." However, this language cannot be understood to signify that a state can exclude any individuals it wants, so long as it does so in accordance with the waiver it obtained from the Secretary. Rather, these clauses require that a state must obtain a waiver in order to provide the HCBS program.

■ Nor does a waiver of "comparability" allow income eligibility line-drawing. 42 U.S.C. § 1396n(c)(3) provides that "[a] waiver granted under this subsection may include a waiver of the requirements of ... section 1396a(a)(10)(B) of this title (relating to comparability)." This provision does not relate to eligibility, but rather to the issue of "services provided" to persons in the program. 42 C.F.R. § 440.250(k). The "comparability" which may be waived is the "amount, duration and scope" of services. § 1396a(a)(10)(B). Thus, the waiver of comparability is not relevant as it pertains to the services to which persons are entitled once their eligibility for Medicaid is determined.

The cases cited by defendant do not sustain her position. In *Martinez v. Ibarra*, 759 F.Supp. 664 (D.Colo.1991), Colorado required applicants for its waiver program to obtain a certain score on a functional incapacity scale. Unlike defendant's limitation here, the Colorado requirement simply helped to ensure that "but for the provision of home or community-based services," 42 U.S.C. § 1396 a(a)(10)(A)(ii), applicants would require the level of care provided in an institution. It was found that "additional screening procedures ... may only screen for the condition the statute pre-

scribes: the need for institutional level care." *Id.* at 667. In *Beckwith v. Kizer*, 912 F.2d 1139 (9th Cir.1990), California imposed a prior hospitalization requirement on home care assistance. This requirement also enforced the statutory "but for" test: California "look[ed] to hospitalization as a criterion" for the need for long-term hospital-level care. *Id.* at 1143.

## B. The Federal Regulations

■ Nor do the federal regulations authorize line-drawing on the basis of the applicant's income or the manner in which he or she would be eligible for Medicaid if he or she were institutionalized. A request for a waiver under § 1396n(c) must "describe the group or groups of individuals to whom the services will be offered," 42 C.F.R. § 441.301(b)(3), and must be limited to "one of the following target groups or any subgroup thereof that the state may define: (i) Aged or disabled, or both. (ii) Mentally retarded or developmentally disabled, or both. (iii) Mentally ill." 42 C.F.R. § 441.301(b)(6). This regulation does not authorize a state waiver program to cover only a subgroup of the elderly. The subgroups that a state "may define" pursuant to 42 C.F.R. § 441.301(b)(3) are those authorized by § 1396n(c)(3), (7), and (9), *i.e.*, a particular part of the state, a particular illness or condition, or a specific number of individuals. No other construction of this regulation comports with the statute. 42 C.F.R. § 435.232 (1982), on which the defendant relies in limiting participation in the home care program to those with incomes below 300 percent of the SSI grant, applied only in states which do not have an institutional medically needy program. *See* 46 Fed.Reg. 48537 (Oct. 1, 1981); 50 Fed.Reg. 10017 (March 13, 1985).

## C. Deference is Not Appropriate

■ Deference to an administrative agency's interpretation of a statute is proper only if (1) the statute is ambiguous, and (2) the agency's decision is "based on a permissible construction of the statute and is sufficiently reasonable." *Detsel v. Sulli-*

*van,* 895 F.2d 58, 62 (2d Cir.1990), citing *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). In the statute at hand, Congress did not directly address the question at issue. *See id.* It must be determined whether the agency's resolution of the matter is permissible and sufficiently reasonable, a stricter standard than the "rational basis" review of acts of Congress. "Administrative agencies must articulate a logical basis for their decision, including a rational connection between the facts found and the choices made." *Detsel,* 895 F.2d at 63.

Defendant's interpretation is not sufficiently reasonable so as to entitle it to deference. Defendant argues that her interpretation is justified by fiscal concerns. However, the defendant has not shown that her interpretation furthers DIM's legitimate fiscal concerns. The PAS/CBS home care program generates savings for the state, as required by 42 U.S.C. § 1396n(c)(2)(D). *See* Plaintiff's Second Supplemental Statement of Undisputed Facts. The defendant argues that it is a question of fact whether such savings would continue if the PAS/CBS program were extended to the plaintiffs, and hence the issue is inappropriate for summary judgment. Defendant asserts that plaintiffs, if not admitted to the program, might not take advantage of their institutional Medicaid eligibility by entering nursing homes, but instead might continue to receive care at home at their own expense. See Defendant's Verified Statement of Supplemental Facts in Dispute, at 2.

In enacting the waiver provisions Congress intended to enable the elderly to avoid institutionalization when they could be safely cared for in the community, so long as that goal could be accomplished without increasing Medicaid expenditures. *See* Committee Agreement on P.L. 97–35, 1981 U.S.Code Cong. & Adm.News, pp. 747–48; Conference Agreement on P.L. 97–35, 1981 U.S.Code Cong. & Adm.News, pp. 1327–29. Defendant's scheme would result in an incongruity whereby the state could be required to provide Medicaid coverage for plaintiffs' institutional care but not for their home care, although experience has proven the latter alternative to be less costly, while appropriate and safe. The likelihood that an applicant for PAS/CBS would actually choose to remain at home at private expense rather than enter a nursing home is no greater for individuals who would qualify for Medicaid as medically needy than for those who would do so as categorically needy. The court may reject as unreasonable an agency's assertion of cost savings. *See Detsel,* 895 F.2d at 65. Nor is it appropriate to project cost savings at the expense of the group for whose benefit the statute was enacted, particularly when they might absorb that expense as a choice pressed on them by the state. It is incongruous to find a cost savings created by a state policy which artificially excludes those intended to be benefited by the scheme.

Nor is it infeasible for defendant to determine whether an individual whose income exceeds 300 percent of the monthly SSI grant would be eligible for Medicaid if institutionalized. Where the applicant has already been admitted to a nursing home, his/her income may be compared directly with the cost of that home. Otherwise, defendant may compare the applicant's income with the average cost of a Medicaid-funded institutional placement. Although comparison with average cost would produce an eligibility determination that is not based on incurred medical expenses, such a result is explicitly permissible under 42 U.S.C. § 1396a(a)(10)(A)(ii)(IV), which mandates that a waiver program cover persons "who *would* be eligible under the State plan under this title *if* they were in a medical institution" (emphasis added), and hence who have not necessarily been institutionalized. Accordingly, the defendant has not provided a reasonable basis for her interpretation of the statute.

III. *Conclusion*

Because there is no basis in the statute or otherwise for denying the PAS/CBS program to the plaintiffs on the basis of how they qualify for Medicaid, the plaintiffs'

cross motion for summary judgment (document # 28) is granted, and the defendant's motion for summary judgment (document # 25) is denied.

SO ORDERED.