PATRICIA P., on her own behalf and as parent of Jacob P., Plaintiff–Appellant,

v.

BOARD OF EDUCATION OF OAK PARK and River Forest High School District No. 200 and The Illinois State Board of Education, Defendants–Appellees.

No. 98–3012.

United States Court of Appeals, Seventh Circuit.

Argued May 18, 1999

Decided Jan. 31, 2000

Margie Best (argued), Oak Park, IL, for plaintiff-appellant.

John A. Relias (argued), Franczek, Sullivan, Mann, Crement, Hein & Relias, Maura A. Fennelly, Office of the Attorney General, Chicago, IL, for defendant-appellee.

Before COFFEY, KANNE and DIANE P. WOOD, Circuit Judges.

COFFEY, Circuit Judge.

Plaintiff–Appellant Patricia P. ("Patricia"), on behalf of her son Jacob P. ("Jacob"), sued the Board of Education of Oak Park and River Forest High School District No. 200 ("School District") and the Illinois State Board of Education ("State Board") under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.* (1996),[1] seeking reimbursement for the cost of Jacob's private schooling at the Elan School in Maine ("Elan"). Plaintiff appeals the district court's granting of summary judgment in favor of Defendants and denial of her Fed-

---

1. Plaintiff filed her complaint in federal court on July 23, 1997 under the 1996 version of the IDEA. Although the IDEA was amended on June 4, 1997 by Pub.L. 105–17, 111 Stat. 37, subchapters I and II of the Act relating to individualized education programs remained in effect until July 1, 1998. Accordingly, references to the IDEA in this opinion relate to the 1996 version.

eral Rule of Civil Procedure 59 and 60 motions. We AFFIRM.

## I. BACKGROUND

Patricia's suit arises from events that began the summer before Jacob was scheduled to enter Oak Park and River Forest High School ("District High School") as a freshman during the 1994–95 school year. Due to Jacob's history of emotional and behavior problems, at the end of his eighth grade year, his elementary school and the School District jointly conducted a two-day evaluation and held a multi-disciplinary conference to develop an individualized education program ("IEP") for his freshman year at the District High School. Both the elementary school and the School District recommended that Jacob be placed in a behavior disorder resource program with 30 minutes per week of social work services. Patricia disagreed with the recommendation and believed that the proposed placement would be insufficient to address Jacob's special needs. Consequently, Patricia enrolled him in a private parochial school that had no formal special education behavior disorder program: Fenwick High School ("Fenwick"). Jacob spent the 1994–95 school year at Fenwick, during which he did not receive any special services from the School District. Patricia did not seek reimbursement for her unilateral placement of Jacob at Fenwick. Before the end of the school year, however, Fenwick school officials informed Patricia that Jacob would not be allowed to return the following school year due to his behavior problems.

On June 2, 1995, Patricia enrolled Jacob in the District High School for the 1995–96 school year. Sometime between June 2 and June 15, however, Patricia applied to have Jacob attend Elan, a State Board approved residential special education school in Poland Spring, Maine. On July 17, 1995, Patricia placed Jacob at Elan where he remained for the duration of his high school education.

In an effort to obtain reimbursement for the cost of Jacob's placement at Elan, on July 25, 1995, Patricia requested a Level I due process hearing to obtain a determination that Elan was an appropriate educational placement for Jacob. On October 12, 1995, the School District moved to dismiss Patricia's request, which was granted two months later on December 12, 1995 when Level I Hearing Officer Bonnie Simon ("Simon") ruled that Patricia saw fit to effectuate a unilateral transfer of Jacob which thus deprived the School District of an opportunity to conduct its own case study evaluation.

Patricia did not appeal the Level I Simon decision; instead, Plaintiff requested a second Level I due process hearing on January 2, 1996.[2] Again, the School District moved to dismiss Patricia's hearing request, but this time basing its motion on the doctrine of claim preclusion. Level I Hearing Officer Keith E. Stearns ("Stearns") rejected the School District's claim preclusion argument and conducted a full hearing on the merits of Plaintiff's claim. However, at the conclusion of the hearing, Stearns agreed with Level I Hearing Officer Simon and denied Patricia's request for reimbursement.

Both parties then cross-appealed the Stearns Level I decision to a Level II hearing officer. On Level II appeal, Patricia sought to overturn Stearns' adverse ruling on the merits while the School District challenged the decision on claim preclusion grounds. On March 28, 1997, Level II Hearing Officer Lisa Salkovitz Kohn ("Kohn") affirmed the Level I Stearns decision not to reimburse Patricia for the Elan placement on the merits. Dissatisfied with Level II Hearing Officer Kohn's decision, Patricia sued the School District and the State Board for reimbursement under the IDEA in federal district court.

---

2. Patricia claims that State Board officials instructed her to file another Level I hearing request rather than appeal the Level I Simon decision.

After Plaintiff filed her complaint but before the State Board filed an answer, the School District filed a motion for summary judgment. In response, Patricia requested additional time for discovery pursuant to Federal Rule of Civil Procedure 56(f). On June 9, 1998, the district court granted the School District's motion for summary judgment, ruling that: (1) the Simon Level I decision on the merits precluded Plaintiff from raising a virtually identical IDEA claim before Level I Hearing Officer Stearns; and (2) notwithstanding claim preclusion grounds, on the merits of Patricia's claim for reimbursement, Defendants did not violate the requirements of the IDEA. Accordingly, the court dismissed Patricia's suit with prejudice and her subsequent Rule 59 and 60 motions. Patricia appealed.

## II. ISSUES

Plaintiff argues on appeal that the district court erred when it granted summary judgement in favor of Defendants based on the doctrine of claim preclusion and the court's finding on the merits that the School District did not violate the IDEA. Patricia also claims that the district court abused its discretion when it granted summary judgment without allowing her an opportunity to conduct discovery. Lastly, Plaintiff asserts that the court erred by dismissing her claims against the State Board.

## III. DISCUSSION

 Although we typically review a district court's decision to grant summary judgment *de novo*, the standard of review for Patricia's challenge differs from that governing the typical review of summary

judgment. *See LaGrange School Dist. v. Illinois State Bd. of Educ.*, 184 F.3d 912, 914–15 (7th Cir.1999). Here, because the district court did not hear additional evidence beyond what was in the records at the Level I and II stages, "[t]he motion for summary judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record." *Heather S. v. State of Wisc.*, 125 F.3d 1045, 1052 (7th Cir.1997) (citation omitted). Accordingly, despite being termed summary judgment, the district court's decision is based on the preponderance of the evidence. *See* 20 U.S.C. § 1415(e)(2) (1996);[3] *Hunger v. Leininger*, 15 F.3d 664, 669 (7th Cir.1994). Indeed,

> a district court must independently determine whether the requirements of the Act have been satisfied. In developing this standard, Congress specifically rejected language which would have made state administrative findings conclusive if supported by substantial evidence. *However, because courts do not have special expertise in the area of educational policy, they must give "due weight" to the results of the administrative decisions and should not substitute "their own notions of sound educational policy for those of the school authorities which they review."*

*Board of Educ. of Murphysboro v. Illinois Bd. of Educ.*, 41 F.3d 1162, 1166 (7th Cir. 1994) (citations omitted) (emphasis added); *see Morton Community Unit Sch. Dist. v. J.M.*, 152 F.3d 583, 587–88 (7th Cir.1998) ("[C]ourts (the district court and then this court, using the same standard) should give due deference to the hearing officers' judgments."); *Heather S.*, 125 F.3d at 1052–53. Thus, on appeal, Patricia bears

---

**3.** 20 U.S.C. § 1415(e)(2) (1996) provides:
Any party aggrieved by the findings and decision made under subsection[s] (b) [or] ... (c) of this section, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy. In any action brought under this paragraph the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

the burden of proof as the party challenging the outcome of the state administrative hearings, *see Board of Educ. of Murphysboro*, 41 F.3d at 1167, and "in the absence of a mistake of law, we may only reverse the district court if its findings were clearly erroneous." *LaGrange*, 184 F.3d at 915.

■ The purpose of the IDEA is "to ensure that children with disabilities receive an education that is both appropriate and free." *Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7, 13, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993) (citing *School Comm. of Burlington v. Department of Educ. of Mass.*, 471 U.S. 359, 373, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985)). A free appropriate public education ("FAPE") is one "specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child 'to benefit' from the instruction." *See Board of Educ. v. Rowley*, 458 U.S. 176, 188–89, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982).

The IDEA also provides federal funds intended to "assist State and local efforts to provide programs to meet the educational needs of children with disabilities in order to assure equal protection of the law." 20 U.S.C. § 1400(b)(9) (1996). The Act requires a state to determine what is uniquely "appropriate" for each child's education by preparing an IEP developed through the joint participation of the local education agency, the teacher, and the parents. 20 U.S.C. §§ 1401(a)(18)-(20), 1412(4), 1414(a)(5) (1996).

■ Section 1415 of the IDEA provides for a hearing process

to challenge the adequacy of the IEP when informal procedures have failed. After a complaint is brought to initiate such a formal hearing, an impartial Level I hearing is conducted by a local administrative officer. The Level I decision then may be appealed to a Level II hearing before another administrative officer appointed by the state department of education. Following the final administrative determination, the party

aggrieved by the decision of the state educational agency has the right to challenge the decision through a civil action brought in either state or federal court.

*Dell v. Board of Educ., Twp. High Sch. Dist. 113*, 32 F.3d 1053, 1055–56 (7th Cir. 1994) (citing 20 U.S.C. § 1415(e)(2)). Should a parent unilaterally place their child in a private placement in response to a school district's failure to comply with the requirements of the IDEA, he or she is entitled to be reimbursed for the cost of the placement. *See Burlington*, 471 U.S. at 369–71, 105 S.Ct. 1996.

■ Under the IDEA, a school district must: (1)follow the procedures set forth in the Act; and (2) develop an IEP through procedures reasonably calculated to enable the child to receive educational benefits. *See Murphysboro*, 41 F.3d at 1166 (citing *Rowley*, 458 U.S. at 206–07, 102 S.Ct. 3034). "Once the school district has met these two requirements, the courts cannot require more; the purpose of the IDEA is to 'open the door of public education' to handicapped children, not to educate a handicapped child to her highest potential." *Murphysboro*, 41 F.3d at 1166.

The district court found that Patricia's IDEA claims before Level I Hearing Officer Stearns were barred by the doctrine of claim preclusion because they were previously raised and disposed of by the first Level I Hearing Officer. The trial judge also conceded that "[t]here is however the possibility that even though Patricia's second request for [a] Level I hearing addressed the identical claim for tuition reimbursement that had been presented in Patricia's first Level I hearing, she was then asserting (at least in part) some matters that she could not have presented in support of that request the first time around." Rather than attempt to "parse the purported distinction between Patricia's two attacks in those terms," the court chose to examine the Level II hearing decision on the merits. For the same reason, we now do the same.

As previously stated, school authorities may be obligated "to reimburse parents for their expenditures on private special education for a child if the court ultimately determines that such placement, rather than a proposed IEP, is proper under the Act." *Burlington*, 471 U.S. at 369, 105 S.Ct. 1996. However, this Circuit has recognized that reimbursement under the act is subject to the parties cooperating in the placement process. *See Johnson v. Duneland Sch. Corp.*, 92 F.3d 554, 558 (7th Cir.1996) (stating that courts have reasoned that a school district "cannot be forced to rely solely on an independent evaluation conducted at the parents' behest"). Other circuits have also recognized that a parent's right to seek reimbursement for a unilateral placement of their child is available only upon a finding that, after cooperating with the school district, there are "sufficiently serious procedural failures by the school district." *Doe v. Metropolitan Nashville Pub. Schs.*, 133 F.3d 384, 388 (6th Cir.), *cert. denied*, 119 S.Ct. 47 (1998); *see also Schoenfeld v. Parkway Sch. Dist.*, 138 F.3d 379, 380–82 (8th Cir.1998); *Ash v. Lake Oswego Sch. Dist.*, 980 F.2d 585, 589 (9th Cir.1992).

The IDEA's preference for a cooperative placement process also serves a practical purpose. Without some minimal cooperation, a school district cannot conduct an evaluation of a disabled child as is contemplated under the IDEA. The IDEA requires a school district to convene a conference with the teacher(s) and the parent(s) to prepare an IEP that assesses the level of special services that would be required in light of the child's disability, and "then review and, if appropriate, revise, its provisions periodically, but not less than annually." 20 U.S.C. §§ 1401(a)(18)-(20), 1412(4), 1414(a)(5) (1996). Further, a school district is required to reevaluate a child every three years to assess the progress or regress of a child's disability. *See Johnson*, 92 F.3d at 558. Indeed, "[i]f a student's parents want him to receive special education un-

der the IDEA, they must allow the school itself to reevaluate the student and they cannot force the school to rely solely on an independent evaluation." *Andress v. Cleveland Indep. Sch. Dist.*, 64 F.3d 176, 178 (5th Cir.1995). Practically speaking, a school board needs the cooperation of the parent(s) to properly evaluate a child and convene a case conference to thereby determine what level of services would address the child's disability. Indeed, in a case with very similar facts to Plaintiff's case, the Eighth Circuit spoke to the issue of cooperation:

> Parkway had no opportunity to provide an appropriate education for Scott in the public school as is preferred under IDEA because he transferred to private school after only one day in eighth grade without any discussion with Parkway officials about possible accommodations to meet his current needs. Reimbursement for private education costs is appropriate only when public school placement under an individual education plan (IEP) violates IDEA because a child's needs are not met. Since Parkway was denied an opportunity to formulate a plan to meet Scott's needs, it cannot be shown that it had an inadequate plan under IDEA. Reimbursement for the costs of his private placement would therefore be inappropriate because school officials were excluded from the decision and because no showing of inadequate services under IDEA can be made.
>
> Scott's unilateral withdrawal from Parkway meant there was no opportunity to modify his IEP to meet his needs for the 1992–1993 school year in public school as is preferred under IDEA and no involvement of school officials in the private placement decision. In these circumstances reimbursement for the expenses of his private education is not required even if it were assumed that private placement was appropriate to meet Scott's needs.

*Schoenfeld*, 138 F.3d at 382. Accordingly, we hold that parents who, because of their failure to cooperate, do not allow a school district a reasonable opportunity to evaluate their disabled child, forfeit their claim for reimbursement for a unilateral private placement. *Accord Schoenfeld*, 138 F.3d at 382; *Tucker v. Calloway County Bd. of Educ.*, 136 F.3d 495, 503–05 (6th Cir.1998); *Ash,* 980 F.2d at 589. This is not to say that a school district is not also bound by the IDEA's preference for a cooperative placement process: this Court will look harshly upon any party's failure to reasonably cooperate with another's diligent execution of their rights and obligations under the IDEA.

So too here did Level II Hearing Officer Kohn find that "the Parent was uncooperative with the School District in June 1995 and by her own actions deprived the District of a reasonable opportunity [to evaluate Jacob] from as early as June 15, 1995." Kohn also ruled that the School District's failure to examine Jacob was due to Patricia's failure to cooperate with the School District. Specifically, Level II Hearing Officer Kohn found that

> "[Patricia] removed [Jacob] unilaterally from the state, knowingly frustrating the [School] District's ability to conduct its own timely evaluation, and has made no genuine offer to make [Jacob] available to the [School] District for an evaluation.... [T]he [School] District has committed no violation by its actions. For this reason, the issue of reimbursement similarly must be decided in the [School] District's favor."

Indeed, Patricia does not dispute that she unilaterally removed Jacob from the District High School and enrolled him at Elan

in Maine, on June 15, 1995 and placed him there on July 17, 1995. She also does not dispute that once Jacob was in Maine, she did not send Jacob back to the school district for evaluation. Similarly, Level I Hearing Officers Simon and Stearns and Level II Hearing Officer Kohn all found that Patricia's sole action evidencing a willingness to avail her son for evaluation for the 1995–96 school year was her offering to allow School District staff to travel to Maine to evaluate Jacob at the Elan School. Thus, Level II Hearing Officer Kohn and the trial judge found that Patricia's actions deprived the School District of a reasonable opportunity to conduct an in-state evaluation of Jacob and to make an informed educational placement recommendation for the 1995–96 school year. Accordingly, we conclude that there is no clear error in the district court's finding that Patricia's lack of cooperation deprived the school district of a reasonable opportunity to conduct an evaluation of Jacob and fulfill its obligations under the IDEA because it is supported by the administrative record and the factual findings made by the Level I and Level II hearing officers. Thus, we further conclude that there was no error in the district court's conclusion that due to Patricia's lack of cooperation, she cannot now seek reimbursement for the Elan placement.[4]

 Patricia also claims that the district court erred by not allowing her an adequate opportunity to conduct discovery prior to the granting of summary judgment.[5] A district court is obligated to permit discovery prior to granting summary judgement if "discovery [was] needed to permit the opponent of a summary

---

4. Patricia also contends that the district court erred by rejecting or ignoring her statements of fact, which violated the court's duty to read the record in the light most favorable to the non-moving party. However, as previously discussed, we exact a different standard of review for IDEA summary judgments—absent clear error, we are bound to affirm the trial judge's factual determinations. *See LaGrange School Dist.*, 184 F.3d at 915.

Further, because of our above conclusion on the merits of Patricia' IDEA claim, we see no need to address the district court's ruling on the claim preclusion issue.

5. In particular, Patricia argues that the district judge erred by not allowing her to demonstrate the appropriateness of Jacob's residential placement at Elan.

judgment motion to gather sufficient information to raise a material issue of fact, [and thus] elementary fairness requires that he have an opportunity to pursue that discovery." *Illinois State Employees Union v. Lewis*, 473 F.2d 561, 565 n. 8 (7th Cir.1972). However, the district court found that "[n]othing that Patricia could dredge up through discovery could alter the course that she herself chose to follow, or the legal consequences flowing from that choice." In evaluating claims for reimbursement under the IDEA, a "district court is not required to allow all evidence proffered by a plaintiff in an IDEA proceeding." *Monticello Sch. Dist. No. 25 v. George L.*, 102 F.3d 895, 901 (7th Cir.1996). Indeed, this Circuit has held that it

> agrees with the First Circuit's statement that the determination of whether to allow additional evidence under § 1415(e)(2) "must be left to the discretion of the trial court which must be careful not to allow such evidence to change the character of the hearing from one of review to a trial *de novo*." This Court has not spoken with specificity on the issue of when a district court must hear testimony at the request of a party in an IDEA proceeding, but we certainly have not mandated that a district court do so every time.

*Monticello*, 102 F.3d at 901–02 (citations omitted).

 Patricia argues that she required discovery on information that was "critical" to "the question presented concern[ing] whether Jacob received [a] FAPE." Indeed, Patricia did not request discovery relating to her failure to adequately avail Jacob for evaluation by the School District. Because the trial judge found that discovery would be futile in light of the court's ruling that Patricia denied the School District with an opportunity to fulfill its obligations under the IDEA and provide Jacob with an FAPE, we are of the opinion that the district court

committed no abuse by granting summary judgment without allowing additional evidence into the record as to the substantive aspects of Patricia's IDEA claims.

## IV. CONCLUSION

We agree with the district court's denial of Plaintiff's action for reimbursement for a unilateral placement under the IDEA.[6] We further hold that the trial court did not abuse its discretion by granting summary judgment in favor of Defendants without allowing Plaintiff the opportunity to conduct additional discovery. Because the district court did not err in dismissing Plaintiff's IDEA claim for reimbursement on the merits, Plaintiff's claims against the State Board were also properly dismissed.

AFFIRMED.

---

6. Because Plaintiff based her Rule 59 and 60 motions on essentially the same reasons she raised on appeal, we also agree with the district court's denials of these motions.