**MORTON COMMUNITY UNIT SCHOOL DISTRICT NO. 709, Plaintiff–Appellant,**

v.

**J.M., a minor, and M.M. and S.M., individually and as parents and next friends of J.M., Defendants–Appellees.**

No. 97–3962.

United States Court of Appeals, Seventh Circuit.

Argued May 15, 1998.

Decided July 27, 1998.

Michael J. Tibbs (argued), Miller, Hall & Triggs, Peoria, IL, for Plaintiff–Appellant.

Janet M. Cartwright, Rock Island, IL, Karen I. Ward (argued), Chicago, IL, for Defendants–Appellees.

Before POSNER, Chief Judge, and FLAUM and DIANE P. WOOD, Circuit Judges.

POSNER, Chief Judge.

The Individuals with Disabilities Education Act grants federal financial assistance for the education of disabled children to all states that agree (as all have) to provide such chil-

dren with "a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living." 20 U.S.C. § 1400(d)(1)(A); see also § 1412(a). The statute defines "related services" to mean "transportation, and such developmental, corrective, and other supportive services (including speech-language pathology and audiology services, psychological services, physical and occupational therapy, . . . social work services, . . . and medical services, except that such medical services shall be for diagnostic and evaluation purposes only) as may be required to assist a child with a disability to benefit from special education." § 1401(22). We are quoting from the Act as it was amended in 1997, and this case arose earlier and may be subject to the previous version, but that is of no consequence as none of the amendments bears on the issue presented by the appeal.

The Department of Education has issued a regulation that largely repeats the statutory definition of related services, except that where the statute says "medical services, except that such medical services shall be for diagnostic and evaluation purposes only," the regulation says simply "medical services for diagnostic or evaluation purposes" and adds: "The term also includes school health services." 34 C.F.R. § 300.16(a). The regulation goes on, however, to define "medical services" as used in 20 U.S.C. § 1401(22) to mean "services provided by a licensed physician to determine a child's medically related disability that results in the child's need for special education and related services," and "school health services" to mean "services provided by a qualified school nurse or other qualified person." 34 C.F.R. §§ 300.16(b)(4), (11). This appeal requires us to consider the scope of the "medical services" exception to the obligation of a state to provide "related services" to disabled children. The issue is at present before the Supreme Court in a case quite similar to ours. *Cedar Rapids Community School District v. Garret F.*, 106 F.3d 822 (8th Cir.1997), cert. granted, —— U.S. ——, 118 S.Ct. 1793, 140 L.Ed.2d 934 (1998). But it will not be argued until the Court's next Term; and the Court may base its decision on a ground that does not rule our case; so we have thought it best to go ahead and decide our case now.

J.M. is a 14–year–old who suffers from severe congenital defects as a result of which he breathes through a tracheostomy tube (enabling him to breathe through an opening cut into his windpipe, rather than through his nose or mouth) with the intermittent aid of a portable ventilator system. The system requires continuous monitoring, as well as frequent adjustments and suctioning to maintain a smooth flow of oxygen, clear out plugs of mucous, and keep his lungs free from fluid buildups. Because he cannot close his eyes, he requires the application of an ointment to his eyes every hour to prevent corneal abrasions. His mobility is limited; he is normally wheelchair-bound, although he can walk a little with the aid of a walker. His growth has been stunted, and he has learning disabilities, as well as difficulty in speaking because of the tube in his neck. For him to be able to function in school—indeed, for him to *survive* the school day—he must be accompanied either by one of his parents, both of whom have been trained to attend to his needs, or by a nurse. The attendant must devote his or her full attention to J.M., and cannot assume any other duties. His lungs must be checked by stethoscope every couple of hours and suctioned every hour and a half or so, and the oxygen tank must be changed about as often; the rest of the time he must be watched to make sure that the ventilator doesn't become disconnected.

J.M.'s parents want the school district to pay for a nurse to attend J.M. while he is in school, which under the special-education program that has been designed for him is four hours a day, four days a week, during the school season. The cost would be about $20,000 a year. There is no question that J.M. benefits educationally and psychologically from school, but he cannot attend unless he has an attendant at all times. In fact he has a nurse, paid for by his father's employee health plan; but there is a lifetime limit on the amount of benefits payable for J.M.'s care under the plan, and that is why the parents want the school district to pick up the tab for the nurse during school hours.

Two successive hearing officers held that the nursing care that J.M. needs at school is a related service within the meaning of the Act and not an excluded medical service. The district court agreed, precipitating this appeal by the school district.

Both parties take extreme positions. The parents argue (admittedly with support from *Garret F.*) that "medical services" are services rendered by a licensed physician; any other service that is necessary to enable a disabled child to benefit from an education is a nonexcluded related service that must be provided free of charge no matter what the character or expense of the service; their lawyer actually argued to one of the hearing officers that "the sky is the limit." On the view that the parents take, if for J.M. to benefit from education the school would have to build a bubble chamber for him and staff it with a team of technicians and registered nurses this service would not be a medical service as long as the onsite team did not include a licensed physician; if it did, presumably only his fee would be excluded from the school district's obligation to pay for related services.

This position is unrealistic about the nature of the modern provision of medical services, most of which, as a matter of economy and specialization, are provided by nurses, nurses' aides, paramedics, medical technicians, medical students, the patients themselves, and members of the patients' families, rather than by physicians. J.M. belongs to the category of children known as "medically fragile" or "technology dependent"—children who in earlier times would not have lived to school age but who today are kept alive by drugs or medical appliances administered largely by nonphysicians. See generally Ann Rozycki, "Related Services under the Individuals with Disabilities Education Act: Health Care Services for Students with Complex Health Care Needs," 1996 *Brigham Young U. Educ. & L.J. 67.*

The parents rely on the Department of Education's regulation defining medical services as those provided by a physician. Read in its most natural way, the regulation seems merely a reminder that diagnostic services, even when provided by a physician, are not excluded medical services. It does not appear to be a comprehensive definition of medical services. Cf. *Board of Education v. Rowley*, 458 U.S. 176, 188, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). But in an amicus curiae brief opposing (unsuccessfully) the grant of certiorari in the *Garret F.* case, the Solicitor General represented to the Supreme Court that it is the position of the Department of Education that "supportive services not provided by a licensed physician may be required if they are necessary to aid a child with a disability to benefit from special education." Brief for the United States as Amicus Curiae in *Cedar Rapids Community School District v. Garret F.*, No. 96–1793, O.T.1997, p. 16 n. 9 (Apr. 22, 1998). In the words "may be" and in the further statement that "each situation must be examined on a case-by-case basis," *id.*, the Department's position as paraphrased in the Solicitor General's brief falls short of declaring that the services involved in our bubble hypothetical should be deemed "related" but not "medical." The general tenor of the brief, however, is that the cost and character of the services are irrelevant; as long as the services are genuinely necessary to enable the disabled child to benefit from an education and cannot be provided outside of school hours, the school district must pick up the tab. See, e.g., *id.* at 18–19.

■ The interpretations that the Department of Education places on its own regulation are entitled, of course, to some measure of judicial deference, *Lyng v. Payne*, 476 U.S. 926, 939, 106 S.Ct. 2333, 90 L.Ed.2d 921 (1986); *Skandalis v. Rowe*, 14 F.3d 173, 177 (2d Cir.1994), even when expressed informally, in a letter or a brief. *Id.* at 179; see *Martin v. OSHRC*, 499 U.S. 144, 157, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991); *Auer v. Robbins*, 519 U.S. 452, 117 S.Ct. 905, 911, 137 L.Ed.2d 79 (1997); *Massachusetts v. FDIC*, 102 F.3d 615, 621 (1st Cir.1996). But the Department's interpretation of "medical services," even as described by the Solicitor General, is not so definite or precise as to rule the bubble hypothetical. Moreover, the description is inaccurate. The opinion letters are evasive. Typical is *Letter to Anderson*, 24 Ind. Dis. Educ.L. Rep. 180 (Feb. 22,

1996), which states: "The determination as to whether a school district must provide one-to-one nursing services [i.e., a fulltime attendant] to a student with a disability in a public school setting must be made on a case-by-case basis in light of the particular facts and circumstances involved. For this reason, [the Department of Education] refused to express any view as to whether such services are a required related service under special education laws." The letter goes on to remark noncommittally that "if the care required is continuous, courts, relying on the private duty aspect of the services, generally have held that the service is an excluded medical service." *Id.*

The school district takes an extreme position on the other side of the issue. It argues that the only health-related services that are not medical services within the meaning of the Act are services traditionally provided by the school nurse. It relies for this position on the references in the Department of Education's regulation to school health services and on the Supreme Court's decision in *Irving Independent School District v. Tatro,* 468 U.S. 883, 104 S.Ct. 3371, 82 L.Ed.2d 664 (1984), which held that catheterization of a child with spina bifida by a school nurse, a procedure that took a few minutes every few hours, was not a medical service within the meaning of the statute (a materially identical predecessor to the IDEA). The fallacy in the school district's reliance on the regulation and the *Tatro* decision is the assumption that because services provided by the school nurse are not deemed medical for purposes of the statute, any service that the school nurse can't provide must be deemed medical. That is a non sequitur. And anyway if J.M.'s parents, who are not medical professionals, can be trained to attend to J.M.'s needs, so can the school nurse. The only reason the school district won't permit her to provide the necessary services to J.M. is that it would take 16 hours of her work week, leaving her with insufficient time to perform the other duties of her job. In effect, the school district is arguing for a rule that would make the child's entitlement to in-school health-maintenance services depend on the amount of spare time a particular school's nurse had in relation to the amount of time required by the school's disabled students. That would make J.M.'s right to attend school at the state's expense turn on the size of the school's nursing staff and the number of other disabled students in the district and the nature of their disabilities.

What the school district is groping for, what several courts have flirted with, see *Neely v. Rutherford County School,* 68 F.3d 965, 972–73 (6th Cir.1995); *Barnett v. Fairfax County School Board,* 927 F.2d 146, 153–54 (4th Cir.1991) (per curiam); *Clovis Unified School District v. California Office of Administrative Hearings,* 903 F.2d 635, 639–44 (9th Cir.1990) (per curiam), and what *Garret F.* and *In re Smith,* 926 F.2d 1027, 1028 (11th Cir.1991) (per curiam), have rejected, is a defense of undue burden. Our bubble-chamber hypothetical makes this quest an understandable one. The IDEA does not contain an explicit defense of undue burden, as the Americans with Disabilities Act does, 42 U.S.C. § 12112(b)(5)(A); *Riel v. Electronic Data Systems Corp.,* 99 F.3d 678, 682 (5th Cir.1996), but it can be argued that one is implicit in the statutory concepts of an "appropriate" education and "related" services. Perhaps at some point the expense of keeping a disabled child alive during the school day is so disproportionate to any plausible educational objective for the child that the expense should not be considered a component of an appropriate education for a severely disabled child or a service reasonably related to such an education. So at least the cases that we have cited suggest. We need not take sides. The school district has made no effort to show that the expense of a fulltime nurse for J.M. would be undue in relation to the other calls on the district's budget. The district has more than 3,000 students, so that the annual cost of such a nurse would be less than $7 per student. Of course there may be other severely disabled children in the district, so that the cumulative expense of the kind of service that J.M. requires could be much more than $7 per student. But the district did not present any evidence concerning other severely disabled children in the district, and perhaps there are none. Nor did it attempt a breakdown of the actual cost of the nursing care that J.M.

needs between the federal government, which funds IDEA in part, the State of Illinois, which also funds it in part, see, e.g., 105 ILCS 5/14–12.01, and the school district itself, see 23 Ill. Adm.Code §§ 226.10, 226.20, which is the only entity complaining about the burden. There is evidence that less than 20 percent of "special education" expenditures by the school district are funded locally. So, for all that appears, the financial burden on the district of the class of expenditures represented by the expense of hiring a nurse to attend J.M. would be slight.

■ With undue burden out of the picture, we are at a loss to conceptualize or operationalize the distinction between related services of a medical nature that are covered by the IDEA and medical services that are not covered; and we are happy that the Supreme Court will be grappling with the issue. Catheterization is obviously a medical service, so after *Tatro* we know that the term "medical services" in the statute and regulation is not to be read literally. And for the reasons explained earlier, confining the term to services rendered by a licensed physician would be arbitrary. So we know *something* about the scope of the term, but not enough to enable us to formulate a rule, and the Department of Education has not yet done so, as we have seen. In such a case we prudently retreat to the principle of judicial deference to the factual, judgmental, or discretionary decisions of the front-line administrative decision-makers, in this case the two hearing officers, both of whom found that the services which J.M. requires are related but not medical. The deferential approach is not inconsistent with the statement in *Tatro* that "this case ... presents the *legal* question of a school's substantive obligation under the 'related service' requirement." 468 U.S. at 890 n. 6, 104 S.Ct. 3371 (emphasis added). There was a clear-cut legal question in that case—whether school nursing fell under the "medical services" exclusion. Earlier the Court had suggested deference to the reasonable judgments of the administrative tribunals established under the Act, *Board of Education v. Rowley, supra,* 458 U.S. at 205–06, 102 S.Ct. 3034, and that is the approach we have taken as well. E.g., *Monticello School District No. 25 v. George L.,* 102 F.3d

895, 905–06 (7th Cir.1996); see also *City of Chicago v. International College of Surgeons,* —— U.S. ——, ——, 118 S.Ct. 523, 532, 139 L.Ed.2d 525 (1997) (dictum).

■ Only superficially is the deferential approach inconsistent with the cases that say that we review the district court's determinations under IDEA de novo, that is, without any deference to that court. *Board of Education v. Illinois State Board of Education,* 938 F.2d 712, 716 (7th Cir.1991); *Board of Education of Murphysboro v. Illinois State Board of Education,* 41 F.3d 1162, 1166 (7th Cir.1994); *Heather S. v. Wisconsin,* 125 F.3d 1045, 1053 (7th Cir.1997); *Doe v. Board of Education,* 115 F.3d 1273, 1276–77 (7th Cir. 1997); *Lachman v. Illinois State Board of Education,* 852 F.2d 290, 293, 297 (7th Cir. 1988). Judicial review under IDEA is multi-tiered. There is first review by the district court of the hearing officers' decisions, and then review by this court of the district court's decision. When the district court does not receive additional evidence—when its only role is that of a reviewing court—its rulings however characterized are necessarily rulings of law, which we indeed review de novo, just as we review a grant of summary judgment de novo. See. e.g., *Hunger v. Leininger,* 15 F.3d 664, 669 (7th Cir.1994); *Law v. Medco Research, Inc.,* 113 F.3d 781, 783 (7th Cir.1997). The fact that the district court may take evidence (20 U.S.C. § 1415(e)(2)) as well as acting solely as a reviewing body complicates the issue of appellate review, see, e.g., *Doe v. Metropolitan Nashville Public Schools,* 133 F.3d 384 (6th Cir.1998), but is not a problem here; and so we are left with the question what standard the district court and therefore we should use in reviewing the hearing officers when no additional evidence is introduced in the district court.

■ The answer given by our cases, such as *Monticello School District No. 25 v. George L., supra,* 102 F.3d at 905–06, and *Board of Education of Murphysboro v. Illinois State Board of Education, supra,* 41 F.3d at 1167, is that the courts (the district court and then this court, using the same standard) should give due deference to the hearing officers' judgments. The upshot, as

explained in *Board of Education v. Illinois State Board of Education, supra,* 938 F.2d at 715–16, is that the district court must give " 'due weight' to the results of [the administrative] proceedings, bearing in mind not 'to substitute [its] own notions of sound educational policy for those of the school authorities,'... [but] at the Court of Appeals level, we view the question of whether an [educational plan for a disabled child] is adequate and appropriate as a mixed question of law and fact, and thus review the district court's ultimate determination *de novo.*" Now it is true that the very next sentence of the opinion from which we have just quoted blurs the distinction that we are trying to make by stating that "in the absence of a mistake of law, the district court's answer to this mixed fact/law question is only reviewable for clear error." *Id.* at 716, citing *Roland M. v. Concord School Committee,* 910 F.2d 983, 990–91 (1st Cir.1990). This proposition makes sense if the district court takes evidence, but if it does not—if its role is purely that of a reviewing court—the basis for deference is obscure. We need not try to resolve the issue here. One thing, at least, is clear, and it decides this case: we do defer, though of course not abjectly, to the view of the hearing officers as to what services a disabled child is entitled to under the IDEA. The services that J.M. requires are time-consuming but do not require a high degree of expertise or any expenses of medical treatment as such—the cost of the tracheostomy supplies, ventilator system, ointment, wheelchair, walker, and other equipment and drugs that J.M. requires are not expenses for which the parents are seeking reimbursement from the school district. At some point the efforts required to maintain a medically fragile, technology-dependent child in school may cross the blurry line that separates ancillary educational services from purely medical interventions. But it was not unreasonable for the hearing officers to conclude that the services that J.M. requires do not cross the line and we are therefore bound by that conclusion.

AFFIRMED.