In the
United States Court of Appeals
For the Seventh Circuit

Nos. 98-2682, 98-2819 & 99-1817

Dale M., by his mother and next friend, Alice M.,

Plaintiffs-Appellees, Cross-Appellants,

v.

Board of Education of Bradley-Bourbonnais
High School District No. 307, et al.,

Defendants-Appellants, Cross-Appellees.

Appeals from the United States District Court
for the Central District of Illinois.
No. 96-2254--Michael P. McCuskey, Judge.

Argued June 7, 2000--Decided January 12, 2001

Before Posner, Coffey, and Ripple, Circuit Judges.

Posner, Circuit Judge. The district judge held that a public school district in Illinois had violated its duty under the Individuals with Disabilities Education Act to provide Dale M. with "a free appropriate public education that emphasizes special education and related services designed to meet [disabled children's] unique needs," where "related services" include "transportation, and such developmental, corrective, and other supportive services (including . . . psychological services . . . [and] social work services . . .) as may be required to assist a child with a disability to benefit from special education." 20 U.S.C. sec.sec. 1400(d)(1)(A), 1401(22). Dale became a student in the district in 1993, when he was 14 years old. He soon became a serious disciplinary problem. He disrupted classes and was truant. The following year he was placed in a "therapeutic day school" designed to deal with disruptive and truant students, but in his first four months he attended school only 20 days, though when he did attend he behaved himself, did the assigned work, and got good grades. For some time he had been drinking alcohol to excess and also consuming marijuana, cocaine, and other illegal drugs, and in January of 1995 he was hospitalized for depression and at the same time charged with residential burglary and theft of a car. He was

placed on probation for these offenses. When he got out of the hospital he refused to return to school, but received home instruction until November, when he was again charged with residential burglary and this time sent to jail. He was examined by a psychologist who found that Dale has no learning disability but instead what the psychologist called a "conduct disorder," along with depression and substance abuse.

The school district wanted to send Dale back to the therapeutic day school. Instead, his mother, with whom he was living (his parents are divorced), obtained Dale's release from jail and placed him in a residential school, the Elan School, in Maine. She demanded that the school district pay for Dale's attending Elan, as otherwise he would not be getting the free appropriate public education to which he was entitled. The school district refused. The Elan School does not offer psychiatric or other medical treatment for substance abuse or depression. As far as we can determine, it's just a boarding school for difficult children. Dale did not like the school, and was excluded from most school activities because of his belligerent attitude.

The mother sought reimbursement of the expense of Dale's attending Elan. Her claim was adjudicated in succession by two hearing officers appointed by the state. The first ordered the public school district to pay but the second, the reviewing officer, reversed the order of the first. He could find no evidence that Elan provided a superior educational experience for Dale to the therapeutic day school, let alone any treatment for his "conduct disorder" or his depression and substance abuse; it merely provided confinement, thus solving the problem of his truancy. The hearing officer did not think that the statute required the school district to pay for confining a truant student.

The district judge reversed and ordered reimbursement. The school district has paid pursuant to the district court's order, and the plaintiffs argue that this makes the school district's appeal moot, but that is wrong. A judgment creditor who pays the judgment pending appeal instead of posting a supersedeas bond (which would automatically stay collection, see Fed. R. Civ. P. 62(d)) is entitled to the return of its money if the decision is reversed, and so the payment does not moot the appeal unless the appellant has relinquished his right to seek repayment if he wins. In re Farrell Lines Co., 761 F.2d 796 (D.C. Cir. 1985) (per curiam); 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure sec. 2905,

pp. 525-26 (2d ed.1995); cf. United States v. Hougham, 364 U.S. 310, 312-13 (1960); United States for Use and Benefit of H & S Industries, Inc. v. F.D. Rich Co., 525 F.2d 760, 764-65 (7th Cir. 1975). The school district has not relinquished that right.

So we must decide whether the district court's decision was correct. As we explained in Morton Community Unit School Dist. No. 709 v. J.M., 152 F.3d 583, 587-88 (7th Cir. 1998), when the district judge does not take fresh evidence but instead bases his review of the hearing officer's decision on the record compiled in the administrative proceedings, he is required to give "due deference" to that decision. That is, the fact that he disagrees with the officer is not enough to justify setting aside the latter's order; he must be strongly convinced that the order is erroneous. See also Board of Education v. Rowley, 458 U.S. 176, 206 (1982); Patricia P. v. Board of Education, 203 F.3d 462, 466-67 (7th Cir. 2000); Linda W. v. Indiana Dept. of Education, 200 F.3d 504, 506 (7th Cir. 1999); Board of Education v. Illinois State Board of Education, 41 F.3d 1162, 1167 (7th Cir. 1994); Susan N. v. Wilson School District, 70 F.3d 751, 757 (3d Cir. 1995). The hearing officer to whom the judge is to defer is the second, that is, the appellate officer, Board of Education v. Illinois State Board of Education, 184 F.3d 912, 915 (7th Cir. 1999); Heather S. v. Wisconsin, 125 F.3d 1045, 1053-54 (7th Cir. 1997); Thomas v. Cincinnati Board of Education, 918 F.2d 618, 624 (6th Cir. 1990), just as, when the National Labor Relations Board reverses one of its administrative law judges, the reviewing court defers to the board, not to the ALJ, e.g., Universal Camera Corp. v NLRB, 340 U.S. 474 (1951); Dilling Mechanical Contractors, Inc. v. NLRB, 107 F.3d 521, 523-24 (7th Cir. 1997); Webco Industries, Inc. v. NLRB, 217 F.3d 1306, 1311 (10th Cir. 2000), and unlike, for example, judicial review of benefits determinations in black lung cases, where the courts defer to the ALJ's decision rather than to the decision of the Benefits Review Board on appeal from the ALJ to it. E.g., Old Ben Coal Co. v. Prewitt, 755 F.2d 588, 589-90 (7th Cir. 1985).

But, by further analogy to the rule in judicial review of Labor Board decisions, Universal Camera Corp. v NLRB, supra, 340 U.S. at 491-97; Dilling Mechanical Contractors, Inc. v. NLRB, supra, 107 F.3d at 524, we believe that the reviewing court, in deciding whether to uphold a reversal by the second hearing officer of the first hearing officer's decision, must give considerable weight to any credibility determinations made by the first hearing officer, since the second officer,

exercising as he does an appellate rather than a trial function, will generally not have been in a position to second guess those determinations. See Heather S. v. Wisconsin, supra, 125 F.3d at 1053-54.

Evidence was presented to the district judge, in the form of affidavits and other documents attached to the summary-judgment papers, but there is no indication in his opinion that he considered any of it. Cross-motions for summary judgment are the standard method for presenting a case to a district court for decision on the record compiled by the administrative tribunal that the court is reviewing. Patricia P. v. Board of Education, supra, 203 F.3d at 466; Heather S. v. Wisconsin, supra, 125 F.3d at 1052; Hunger v. Leininger, 15 F.3d 664, 669-70 (7th Cir. 1994); Kirkpatrick v. Lenoir County Board of Education, 216 F.3d 380, 385 (4th Cir. 2000). The grant of the plaintiffs' motion thus implied that the judge was not considering any evidence not presented in the administrative proceedings. The evidence that had been submitted for the first time in the district court indicated, for example, that after the decision by the second hearing officer Dale graduated from Elan. But the judge said that "Dale is receiving an educational benefit from Elan" (emphasis added), implying that Dale was still at the school. This is a further indication that the judge didn't consider any of the new evidence.

The judge recited the correct, the deferential, standard of review for the case where no new evidence is considered (still another indication that he did not consider the new evidence), but when he came to actually discuss the second hearing officer's decision, he applied an incorrect standard. He said for example that he "disagrees with the reviewing officer's conclusion that Elan was inappropriate" and "a preponderance of the evidence shows that Elan is an appropriate placement for Dale." That is the language of de novo determination of contested factual issues. The judge may have been confused by the language of the statute: "In any action brought under this paragraph the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. sec. 1415(i) (2)(B). When the court has before it evidence that was not before the hearing officers, the amount of deference due the reviewing officer declines, since the latter's decision was based on an incomplete record. But when there either is no new evidence or the judge for some reason doesn't

consider it, he owes considerable deference to the reviewing officer.

When due deference is given that officer, we think it plain that his determination that placement in the Elan school was not the "free appropriate education" to which the statute refers should not have been disturbed. It is true that Dale has psychological problems that interfered with his obtaining an education, even though he has no learning disability or retardation. And the statute refers explicitly to "psychological services" as one type of "related services" that the statute may require a school district to pay for if, without them, the disabled child--and we do not understand the school district to be denying that Dale's problems add up to a disability within the meaning of the statute, 20 U.S.C. sec. 1401(3); 34 C.F.R. sec. 300.7; Board of Education v. Nathan R., 199 F.3d 377, 379 n. 2 (7th Cir. 2000); compare Rodiriecus L. v. Waukegan School District No. 60, 90 F.3d 249, 254 (7th Cir. 1996)--cannot obtain an education. But the Elan School does not provide psychological services, at least to Dale. For him all it provides is confinement. He was placed in Elan not from any school in the defendant school district, but from jail. Elan is a jail substitute. An incorrigible truant and lawbreaker, Dale does better in every respect when he is in a custodial setting than when he lives at home.

The only difference between the therapeutic day school in which the school district put him (and wanted to return him to, despite his history of truancy) and Elan is that Elan is a boarding school specializing in anfractuous kids. So at least the second hearing officer determined, and the district court was obliged to defer to that determination, which was both supported by the evidence and within the presumed superior competence of the administrative process to resolve matters of educational policy. Hence Elan was the "appropriate" placement for Dale, within the meaning of the statute, only if confinement is a related service within that meaning, since obviously it is not an educational service. We think--and this is a pure legal issue, as to which we owe no deference to the hearing officer, Morton Community Unit School District No. 709 v. J.M., supra, 152 F.3d at 587--that it stretches the statute too far to classify confinement thus.

The essential distinction is between services primarily oriented toward enabling a disabled child to obtain an education and services oriented more toward enabling the child to engage in noneducational activities. The former are "related services" within the meaning of the

statute, the latter not. Butler v. Evans, No. 99-3135, 2000 WL 1231053, at *4-*6 (7th Cir. Aug 31, 2000). In our Morton case, for example, the medical-support services rendered the plaintiff were for the purpose of enabling him to attend school. 152 F.3d at 583. In contrast, the purpose of the "service" that the school district is being asked to pay for is to keep Dale out of jail, both directly, because the judge was willing to release him from jail to Elan, and indirectly, because Dale is less likely to commit burglary and other crimes when he is in a residential facility than when he is living at home with only his mother to keep an eye on him.

Another way to put this is that Dale's problems are not primarily educational. He has the intelligence to perform well as a student and no cognitive defect or disorder such as dyslexia that prevents him from applying his intelligence to the acquisition of an education, without special assistance. His problem is a lack of proper socialization, as a result of which, despite his tender age, he has compiled a significant criminal record. His substance abuse interferes with his schooling; that is true; but it interferes with much else besides, such as ability to conform to the law and avoid jail. Supposing that the most effective educational program for Dale would be to take correspondence courses while confined in a prison, we do not think his mother would be arguing that the school district would have to pay the prison authorities for the expense of incarcerating him. But that is close to what she is arguing--that since confinement, among its other benefits to Dale, will make it easier for him to obtain an education, the school district is responsible for the cost of confinement. That, we conclude, goes too far.

This is not a case like Kruelle v. New Castle County School District, 642 F.2d 687 (3d Cir. 1981), where residential placement was necessary for educational reasons. The case involved a thirteen year old who had an IQ below 30 and could not walk, dress, or eat without assistance. Under stress, he would self-induce vomiting and choking; inconsistent approaches or environments would trigger this behavior. For that child, an education meant training in the basic social skills of using the toilet, dressing, feeding, and simple communication. That education required residential placement, which was therefore a "necessary predicate for learning" as opposed to being--a good description of the present case, as of Burke County Board of Education v. Denton, 895 F.2d 973 (4th Cir. 1990)--a "response to medical, social or emotional problems that are segregable from the learning process." 642 F.2d

at 693; cf. Tennessee Dep't of Mental Health & Mental Retardation v. Paul B., 88 F.3d 1466 (6th Cir. 1996); McKenzie v. Smith, 771 F.2d 1527 (D.C. Cir. 1985). Although Teague Independent School District v. Todd L., 999 F.3d 127, 132 (5th Cir. 1993), could be read to leave open the possibility that "twenty-four hour supervision in a locked unit" might be a related service, the court pointedly remarked that the "focus" of the highly restrictive facility that Todd's parents preferred "was on behavior management," not education.

No other issues need be discussed. The judgment in favor of the plaintiffs, and the award of attorneys' fees to them, are reversed with directions to enter judgment for the defendants. The dismissal of the other counts in the complaint is affirmed. The motion to dismiss the school district's appeal on the ground of mootness is denied, and the plaintiffs' cross-appeals are denied because they have no merit in light of our decision of the school district's appeal.

Affirmed in Part, Reversed in Part.

RIPPLE, Circuit Judge, dissenting. While chiding the district court (unfairly in my view) for not having given sufficient deference to the superficial analysis of the Level II hearing examiner, the majority fails itself to give adequate deference of a far more fundamental character--deference to the manifest will of the Congress that the District must provide support services that are necessary for the meaningful delivery of educational services. By holding that, as a matter of law, the residential program at Elan does not come within the ambit of the Act, the majority not only dooms Dale M.'s case but also sets this circuit on a course different from that of all the courts that have interpreted this provision.

Recognizing that the nature of support services necessarily will be varied and, in the case of some children, broad, every circuit that has addressed the question has held that the Congressional mandate requires the provision of a support service that is "a necessary predicate for learning," Kruelle v. New Castle County Sch. Dist., 642 F.2d 687, 693 (3d Cir. 1981), and not "segregable from the learning process," id. See Tennessee Dep't of Mental Health & Mental Retardation v. Paul B., 88 F.3d 1466, 1471 (6th Cir. 1996) (stating that districts are not responsible for residential placement "separable

from the learning process" and citing Kruelle); Burke County Bd. of Educ. v. Denton, 895 F.2d 973, 980 (4th Cir. 1990) ("Where medical, social or emotional problems are intertwined with educational problems, courts recognize that the local education agency must fund residential programs . . . .") (citing Kruelle); McKenzie v. Smith, 771 F.2d 1527, 1533 (D.C. Cir. 1985) (quoting Kruelle standard). Today, this circuit substitutes for that test a very different formulation: Costs are to be disallowed if the support services are not aimed at a problem that is "primarily educational." Slip op. at 7. That the difference between the panel majority's formulation and that of our sister circuits is not just one of semantics but a chasm of substance is made starkly clear by the analysis of the Third Circuit in Kruelle. There, it noted that "basic self-help and social skills such as training, dressing, feeding and communication" can be part of the necessary process of education. Kruelle, 642 F.2d at 693 (internal quotation marks and citations omitted).

Dale M.'s truancy is no doubt complex in its causation and therefore in the degree of its interrelatedness with his capacity to cope with the usual demands of education. We lack the institutional capacity to conduct an independent analysis of Dale M.'s educational needs. Indeed, we previously have been "cautioned that courts lack the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." Board of Educ. v. Rowley, 458 U.S. 176, 205 (1982) (internal quotation marks and citations omitted). Notably, here the District itself considered Dale M.'s truancy to be related to his educational progress until the need for a residential placement, and the attendant expense, became an issue. It was only at that point that the District took the position that such a program was beyond it obligations under the Act.

In determining that the Elan program goes "too far" to be within the coverage of the Act, the majority takes issue with the characterization of Dale M. reached by the professional educators and, indeed, by the administrative tribunals and the district court. In the majority's view, he is a delinquent deserving of punishment, not education. The majority is entitled to its view; in deciding this case, however, it must stay within the record, a record that includes the conclusions of professional educators who viewed his situation in a very different light. For instance, in evaluating the program at Elan, the majority characterizes the program as one that simply provides "confinement." Slip op. at 6. Yet, the record makes clear that the program at

Elan involves three separate components, life skills, counseling and class work. Reasonable people can disagree about the effectiveness of providing a structured environment that demands contributing labor to a communal living environment; however, none of us who wear black robes are in an institutional position to second guess the Illinois Department of Education that approved the program as a permissible placement for Illinois school children. See Butler v. Evans, 225 F.3d 887, 894 (noting that residential treatment at a psychiatric hospital could not be compensable as an educational placement because it was not an accredited educational institution); Seattle Sch. Dist., No. 1 v. A.S., 82 F.3d 1493, 1502 (9th Cir. 1996) (rejecting school district's argument that it should not be responsible for residential placement in part because residential facility was "an accredited educational institution under state law"); Clovis Unified Sch. Dist. v. California Office of Admin. Hearings, 903 F.2d 635, 646 (finding that school district was not financially responsible for placement because the facility was "not included as [an] educational placement option[ ] for handicapped pupils in that state").

 In sum, I must conclude that the court has improvidently and erroneously parted company with the other circuits that have defined when a residential placement is permissible. In doing so, it has set the courts of this circuit on a course at odds with the course set throughout the United States for the provision of support services under the Act. It has compounded that error by substituting its own view for that of professional educators as to the needs of Dale M. and the merits of the Elan program. Accordingly, I respectfully dissent.